[No. 51176–4.  En Banc.  April 18, 1985.]

LOCAL NO. 497, INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, AFL–CIO, *Appellant,* v.
PUBLIC UTILITY DISTRICT NO. 2 OF GRANT
COUNTY, ET AL, *Respondents.*

*Hugh Hafer, David Campbell,* and *Hafer, Price, Rinehart & Schwerin,* for appellant.

*Baird, White & Schultheis,* by *Richard E. Schultheis,* for respondents.

BRACHTENBACH, J.—The issue is which of two statutes governs the setting of minimum wages by a public utility district (hereinafter PUD). RCW 39.12 is a "prevailing wage" statute applicable to all public works by the State or any county, municipality or political subdivisions. An earlier statute, RCW 54.04.090, is a "prevailing wage" statute limited to PUD's. Their provisions conflict. The trial court interpreted and applied RCW 54.04.090. We reverse.

The plaintiff–appellant is International Brotherhood of Electrical Workers, Local No. 497, AFL–CIO (hereinafter Union). The defendants–respondents are Public Utility District No. 2 of Grant County and General Electric Company (hereinafter GE). GE is not a party to this appeal. The respondents PUD and GE contracted for GE to perform generator rewinding work at one of the respondent PUD's hydroelectric dams. The wage rates for workmen under the contract were set by a resolution of the PUD commission, which acted pursuant to RCW 54.04.090.

The Union sued, alleging that the contract wage rates were substantially below the prevailing rates within the utility district for work of like character. The trial court applied RCW 54.04.090. It avoided a determination of the applicable classification of work character by finding a dual wage rate depending on the identity of the workers. Since all the workers under this contract were GE's Spokane in–house employees, properly paid at the rate set forth in the contract resolution, summary judgment in favor of the respondents PUD and GE was granted.

It is unnecessary to immediately determine whether the dual wage or the Spokane in–house rates applied by the trial court are within the contemplation of RCW 54.04.090. Rather, our inquiry focuses first on whether RCW 54.04.090

should be applied at all, that is, whether RCW 54.04.090 was repealed by implication and superseded by RCW 39.12.010 *et seq.*

To resolve this issue, we examine the two potentially applicable statutes. RCW 54.04.090 was part of the PUD enabling law which came from an initiative passed in 1930. It was codified in Laws of 1931, ch. 1, § 8, p. 25 which reads in part:

> Every contractor and sub–contractor performing any work for said public utility districts or local utility districts within said public utility district shall pay or cause to be paid to its employes on such work or under such contract or sub–contract not less than the minimum scale fixed by the resolution of the commission prior to the notice and call for bids on such work. The commission, in fixing such minimum scale of wages shall fix the same as nearly as possible to the current prevailing and going wages within the district for work of like character.

RCW 39.12 was enacted by Laws of 1945, ch. 63, § 1, p. 199. The provision here of concern is RCW 39.12.020, which states in part:

> The hourly wages to be paid to laborers, workmen or mechanics, upon all public works and under all public building service maintenance contracts of the state or any county, municipality or political subdivision created by its laws, shall be not less than the prevailing rate of wage for an hour's work in the same trade or occupation in the locality within the state where such labor is performed.

Thus, we have one statute which authorizes the PUD commission to set the minimum wage rate and another which provides a more definitive and comprehensive scheme for determining the minimum wage. The primary differences between the two acts exist in the criteria used for determining an area's prevailing wage and in the governmental body which makes such determination. In RCW 39.12.010 *et seq.*, the Department of Labor and Industries, rather than the PUD commission, is the acting body.

The 2–pronged test employed by this court to resolve the repeal by implication issue provides that a

repeal occurs when

(1) the later act covers the entire subject matter of the earlier legislation, is complete in itself, and is evidently intended to supersede prior legislation on the subject; or (2) the two acts are so clearly inconsistent with, and repugnant to, each other that they cannot be reconciled and both given effect by a fair and reasonable construction.

*Paulson v. County of Pierce,* 99 Wn.2d 645, 650, 664 P.2d 1202, *appeal dismissed,* 464 U.S. 957 (1983).

Under the first prong of the test, the later act, RCW 39.12 clearly encompasses the body politic, *i.e.,* the PUD, and the subject matter, *i.e.,* minimum wages, of RCW 54.04.090. The Legislature's clear intent to repeal is evident in the language of the later statute, *see El Coba Co. Dormitories, Inc. v. Franklin Cy. PUD,* 82 Wn.2d 858, 514 P.2d 524 (1973) and *Herrett Trucking Co. v. State Pub. Serv. Comm'n,* 58 Wn.2d 542, 544, 364 P.2d 505 (1961), and the comprehensive and detailed criteria, specifications and procedures of RCW 39.12.010 *et seq.* Under the second prong of the test, it is also apparent that the two acts are so inconsistent that they cannot be reconciled and both given reasonable construction.

To hold that RCW 54.04.090 survived the enactment of RCW 39.12, we would have to amend RCW 39.12. Where RCW 39.12.020 now expressly includes "all public works . . . of the state or any county, municipality or political subdivision" we would insert by judicial fiat "except public utility districts." We would have to insert a similar exception to allow the PUD commission to use the criteria of RCW 54.04.090 rather than that contained in RCW 39.12. This we cannot do constitutionally.

We have often said that repeals by implication are not favored. *Walton v. Absher Constr. Co.,* 101 Wn.2d 238, 242, 676 P.2d 1002 (1984); *Paulson v. County of Pierce, supra; U.S. Oil & Ref. Co. v. Department of Ecology,* 96 Wn.2d 85, 88, 633 P.2d 1329 (1981); *Jenkins v. State,* 85 Wn.2d 883, 886, 540 P.2d 1363 (1975); *Tardiff v. Shoreline Sch. Dist.,*

68 Wn.2d 164, 166, 411 P.2d 889 (1966). This disfavor is the result of a presumption that the Legislature acts with a knowledge of former related statutes and would have expressed its intention to repeal them. *State v. Jackson,* 120 W. Va. 521, 199 S.E. 876 (1938); 1A C. Sands, *Statutory Construction* § 23.10, at 231 (4th ed. 1972). However, this presumption runs directly counter to the real probability of legislative oversight that occurs when the Legislature deals with the detail in the mass of statute law within the state. 1A C. Sands, at 223, 232. Had the Legislature been aware that it was repealing the PUD minimum wage law, what would it have done? Searching for legislative intent in these circumstances is usually fruitless. The very reason we must determine repeal by implication is that presumably the Legislature was unaware of the possible repeal result. It is difficult to ascertain intent about something of which one is unaware.

As stated above, both prongs of the 2–pronged test are fulfilled. When these tests are fulfilled, the one opposing repeal by implication must show some conditions, facts or legislative history which overcomes the repeal by implication conclusion which exists when the two tests are met.

Our conclusion is consistent with an Attorney General's opinion of 25 years ago, admittedly dealing with different entities, but applicable in principle. AGO 156 (1960). In this 1960 opinion, the Attorney General found that a similar prevailing wage act provision pertaining to the public works of school districts was impliedly repealed by the general statute, RCW 39.12. That the Legislature has never directly addressed this precise issue in all of the legislative sessions since 1960 is persuasive, but not binding, indication of concurrence.

Respondent PUD argues that RCW 54.04.090, even if repealed by implication, was revived by a 1955 act which contained language substantially similar to the earlier law. Laws of 1955, ch. 124, § 4. Revival by implication following a repeal by implication is even less desirable as a principle

of construction than repeal by implication alone. It wreaks havoc with any orderly progression of statutory tracing.

■ The folly of engaging in speculation as to the Legislature's intent to revive a repealed statute is especially apparent when the alleged revival takes place during a period of massive code revisions. From 1931 until 1949 the language of RCW 54.04.090 was only one provision of the statute codified as Rem. Rev. Stat. § 11612. In 1949 the code revision committee reorganized statutory language into various sections and the language which now appears as RCW 54.04.090 was codified as RCW 54.01.09. The next mention of this language appears in the session laws of 1955 where it was then codified as RCW 54.04.090. The language "and going" had been deleted by the code revision committee in 1949 and this language remained deleted in the 1955 version. The sections set out for amendment in Laws of 1955, ch. 124, consisted of the totality of the language of Rem. Rev. Stat. § 11612.

RCW 54.04.090 was included in the 1955 act as part of the amendment–revision of the entire section, Rem. Rev. Stat. § 11612, of Title 84, chapter 3, as initiated by the 1949 code revision. This court has reasoned that the impliedly repealed provisions were restated only because the Washington State Constitution, article 2, section 37 requires that statutes to be amended be set forth in full. The Legislature does not give a previously repealed statute life by merely reciting it in an amendatory act. *State v. Sam,* 85 Wn.2d 713, 716–17, 538 P.2d 1209 (1975). The code revisers were authorized by RCW 1.01.03 to make nonsubstantive changes, and the deletion of "and going" should be viewed as such.

■ In summary, we hold that RCW 54.04.090 was repealed by implication upon the enactment of RCW 39.12; it was not revived by the 1955 amendment. This holding obviates the need to consider the correctness of the trial court's interpretation and application of RCW 54.04.090.

The order granting summary judgment for respondents is reversed; the matter is remanded for further proceedings consistent with this opinion.

UTTER, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.
DOLLIVER, C.J., concurs in the result.